J-S25009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MANNY ELLIS, | |
| Appellant | No. 1108 EDA 2016 |

Appeal from the PCRA Order Entered March 4, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006414-2009

BEFORE:  BENDER, P.J.E., RANSOM, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JUNE 13, 2017**

Appellant, Manny Ellis, appeals from the post-conviction court's March 4, 2016 order denying his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Appellant raises six claims for our review, all involving ineffective assistance of counsel.  After careful review, we affirm.

The PCRA court summarized the factual history of Appellant's case as follows:

> On December 16, 2008, [Appellant] and co-defendant Ramieq Jackson [(hereinafter "Jackson")] approached Isaiah Walker [(hereinafter "Walker")] when he was outside of his residence located on the 1500 block of Grange Street. [Appellant] and Jackson wore dark hoodies and were seated in a green Crown Victoria sedan.  Jackson got out of the car and said to [Appellant], "There he go."  [Appellant] then fired several shots at Walker, who was struck in the chest and in the left arm.

Walker's mother[, Bernadette Walker (hereinafter "Ms. Walker"),] was inside the residence when she heard the gunshots and a male voice state, "I told you I would get you." She and Walker's brother[, David Murray (hereinafter "Murray"),] hurried outside to help Walker who was lying on the street. As they helped him, Walker told [Ms. Walker] and [Murray] that he was shot by [Appellant] and Jackson. [Appellant] and Jackson targeted Walker because they believed that he was cooperating in a robbery case against a mutual friend.

Walker provided a written statement to police on the night of the shooting wherein he identified [Appellant] and Jackson as the individuals who shot him.[1] At trial, Walker was given the opportunity to deny or admit making the prior statements. After denying making the statement, the Commonwealth called Detective Knoll to testify regarding the content and circumstances of the statement including that it was signed and adopted by Walker and that he told police that [Appellant] was the person who shot him.[2]

[Ms. Walker] provided a signed and written statement to police in which she stated that Walker told her that he was shot by [Appellant] and Jackson.[3] At trial, [Ms. Walker] testified that she did not remember anything that occurred on the day of the shooting. She also testified that she did not remember what

---

[1] Specifically, when asked, "who shot you tonight?" Walker replied, "Ramieq [Jackson] was there, but [Appellant] shot me." N.T. Trial, 12/3/10, at 171.

[2] Additionally, the Commonwealth confronted Walker with his prior testimony at the preliminary hearing. *See* N.T. Trial at 184-196. There, Walker was asked what happened on the day of the shooting, and he replied, "I was coming from the store and I got involved in a fight with Ramieq [Jackson] but as I was going into the house I was shot by [Appellant]." N.T. Preliminary Hearing, 5/9/09, at 5. Walker also identified Appellant in court as the person who shot him. *Id.* at 8.

[3] Specifically, Ms. Walker told police that she "asked [Walker] who shot him, and he said Ramieq [Jackson]. He also said something about [Appellant]." N.T. Trial at 63.

she said to police or even signing her statement. The Commonwealth introduced her statement into the record wherein she indicated that Walker told her that [Appellant] shot him.

[Murray] also provided a signed and written statement to police in which he stated that Walker told him that he was shot by [Appellant] and Jackson.[4] When called as a witness for the Commonwealth, [Murray] also failed to recall the details of his statement to police. … The Commonwealth, as with [Ms. Walker], introduced [Murray's] statement … that identified [Appellant] as the shooter into the record.

PCRA Court Opinion (PCO), 5/17/17, at 1-3 (citations to the record and footnote omitted).

Following Appellant's non-jury trial on December 3, 2010, the court convicted him of attempted murder, 18 Pa.C.S. § 901(a); aggravated assault, 18 Pa.C.S. § 2702(a); criminal conspiracy, 18 Pa.C.S. § 903(a)(1); carrying a firearm without a license, 18 Pa.C.S. § 6106(a)(1); carrying a firearm in public in Philadelphia, 18 Pa.C.S. § 6108; and possessing an instrument of crime, 18 Pa.C.S. § 907(a). On April 7, 2011, he was sentenced to an aggregate term of 14 to 30 years' imprisonment. He filed a timely direct appeal to this Court, and after we affirmed, our Supreme Court denied his subsequent petition for allowance of appeal. *Commonwealth v. Ellis*, 46 A.3d 829 (Pa. Super. 2012) (unpublished memorandum), *appeal denied*, 53 A.3d 49 (2012).

_____

[4] Specifically, Murray told police that he "asked [Walker] who shot him, and he told me Ramieq [Jackson] and [Appellant]." N.T. Trial at 123.

Appellant filed a timely PCRA petition on August 26, 2013. He thereafter retained private counsel, who filed an amended petition on October 27, 2014. On January 19, 2016, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition and, after receiving no response from Appellant, the court did so by order entered March 4, 2016. Appellant filed a timely notice of appeal, and also timely complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, he presents the following six issues for our review:

> I. Was trial counsel ineffective for failing to object to [the] admission of the co-defendant's statement in violation of the Confrontation Clause?
>
> II. Was trial counsel ineffective for failing to object to the admission of the victim's [statement to] police … where the victim was incoherent while giving and signing it and the preliminary hearing court excluded it on those grounds?
>
> III. Was trial counsel ineffective for failing to object to hearsay testimony about unspecified witnesses identifying Appellant as a suspect?
>
> IV. Did trial court bias and prosecutorial misconduct violate Appellant's right to a fair trial and was appellate counsel ineffective for failing to raise this issue?
>
> V. Were trial and appellate counsel ineffective for failing to challenge the sufficiency of the evidence for all convictions where the sole evidence was recanted out-of-court statements which were inconsistent with each other and given under circumstances diminishing their reliability?
>
> VI. Was trial counsel ineffective for failing to counsel Appellant about his jury-trial right and pressuring him into waiving it?

Appellant's Brief at 1-2 (unnecessary capitalization omitted).

- 4 -

First, "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Morales**, 701 A.2d 516, 520 (Pa. 1997) (citing **Commonwealth v. Travaglia**, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has directed that the following standards apply:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [**Commonwealth v.**] **Colavita**, 606 Pa. [1,] 21, 993 A.2d [874,] 886 [(Pa. 2010)] (citing **Strickland**[ **v. Washington**, 104 S.Ct. 2053 (1984)]). In Pennsylvania, we have refined the **Strickland** performance and prejudice test into a three-part inquiry. **See** [**Commonwealth v.**] **Pierce**, [515 Pa. 153, 527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. **Commonwealth v. Ali**, 608 Pa. 71, 86, 10 A.3d 282, 291 (2010). "If a petitioner fails to prove any of these prongs, his claim fails." **Commonwealth v. Simpson**, [620] Pa. [60, 73], 66 A.3d 253, 260 (2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. **See Ali, supra**. Where matters of strategy and tactics are concerned, "[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually

pursued." ***Colavita****,* 606 Pa. at 21, 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." ***Commonwealth v. King****,* 618 Pa. 405, 57 A.3d 607, 613 (2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" ***Ali****,* 608 Pa. at 86–87, 10 A.3d at 291 (quoting ***Commonwealth v. Collins****,* 598 Pa. 397, 957 A.2d 237, 244 (2008) (citing ***Strickland****,* 466 U.S. at 694, 104 S.Ct. 2052)).

***Commonwealth v. Spotz****,* 84 A.3d 294, 311-12 (Pa. 2014).

<u>**Issue I**</u>

Appellant first argues that his trial counsel acted ineffectively by not challenging the admission of a written statement made by his non-testifying co-defendant, Jackson, which "was insufficiently redacted, replacing Appellant's name with 'blank.'" Appellant's Brief at 13. Appellant contends that the admission of this confession violated the United States Supreme Court's holdings in ***Bruton v. U.S.****,* 391 U.S. 123 (1968) (declaring that a defendant "is deprived of his rights under the Confrontation Clause when his non[-]testifying co[-]defendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the co[-]defendant"), and ***Gray v. Maryland****,* 523 U.S. 185, 197 (1998) (holding that a confession by a non[-]testifying co[-]defendant that was redacted using blanks, the word 'delete,' or an obvious symbol violates the Confrontation Clause).

After careful review, we disagree with Appellant that he was prejudiced by counsel's failure to object to the admission of Jackson's confession, as Appellant has not demonstrated that it impacted the trial court's verdict in this case. Initially, as the PCRA court stresses, Appellant was not tried by a jury and, thus, the concerns underlying the *Bruton* decision are not present in this case. *See* PCO at 6 (concluding that "*Bruton* only applies to the introduction of redacted confessions during *jury* trials, not bench trials") (citing *Commonwealth v. Brooks*, 660 A.2d 609, 614 n.3 (Pa. Super. 1995) (noting that, because the appellant "was tried by a judge, not a jury, … the problems associated with the jury's improper use of a redacted confession which were addressed in *Bruton, supra*, … are not present in this case"); *see also Commonwealth v. Managan*, 281 A.2d 666, 668 (Pa. Super. 1971) (noting "that the fundamental reason on which the decision in *Bruton* was predicated was a balancing of risks, *i.e.*, the risk that a jury could or would not disregard prejudicial out-of-court inculpatory statements of a co[-]defendant, who did not testify, although instructed by the court to do so, against the risk of the jury system not accomplishing the justice it is established to render. Such a risk is not present in this case where the fact[-]finder i[s] the judge who, in a jury trial, would be the one to give the instruction to the jury to disregard such prejudicial evidence. Certainly it is not too unreasonable to presume that he would himself obey the mandate he would have given to a jury.").

Moreover, the PCRA court points out that "[t]he trial judge, as the factfinder, is presumed to be perfectly instructed as to how to consider evidence introduced at trial[,] including improperly **Brutonized** statements." PCO at 6 (citing **Commonwealth v. Harvey**, 526 A.2d 330, 333 (Pa. 1987) (stating that "where a criminal case is tried before a judge sitting without a jury, there is a presumption that his knowledge, experience and training will enable him to disregard inadmissible evidence"). Contrary to Appellant's argument on appeal, nothing in the PCRA court's decision suggests that it considered the language of **Harvey** as a "rule absolute[,]" meaning that the presumption discussed in **Harvey** could not be overcome. Appellant's Brief at 15. In any event, the record does not support Appellant's assertion that the '**Harvey** presumption' **was** overcome in this case. According to Appellant,

> [t]here is at least one concrete indication that the [trial] court **did** use Jackson's statement as evidence against Appellant. Absent Jackson's statement, there was no evidence to convict Appellant of **conspiracy** with Jackson to commit first-degree murder.

**Id.** at 18 (emphasis in original).

Appellant's argument is unconvincing, as there was ample evidence - aside from Jackson's confession - to support the trial court's conclusion that Appellant and Jackson conspired to murder Walker. Namely, in his statement just after the shooting, Walker told police that just before he was shot, Jackson and Appellant arrived together in a car, Jackson said, "there he go," and Appellant then shot him. **See** N.T. Trial at 239-240. Walker

also told police that he had "been having a beef" with Appellant and Jackson "[s]ince the summer." *Id.* at 240. At the preliminary hearing, Walker again said that he had a fight with Jackson, and then later was shot by Appellant. *Id.* at 186. Walker also testified at the preliminary hearing that Appellant was "close up to [him]" when Appellant shot him three times, once in his chest and twice in his arm. *Id.* at 189, 190, 191. Additionally, on the night of the shooting, Appellant's brother, Murray, told police that he asked Walker who shot him, and Walker "said Ramieq [Jackson] and [Appellant]." *Id.* at 224. Murray also said that "[t]here was a lady in the car stopped right next to [the victim] who told [Murray] that there were two guys running up on [the victim] and shooting at him."[5] *Id.*

This evidence was sufficient to prove that Appellant intended to kill Walker, that he and Jackson agreed to commit that crime together, and that Appellant took an overt act in furtherance of that agreement by shooting Walker three times at close range, striking Walker in his chest and arm. *See Commonwealth v. Galindes*, 786 A.2d 1004, 1010 (Pa. Super. 2001) (stating the elements of criminal conspiracy) (citation omitted); *see also Commonwealth v. Smith*, 985 A.2d 886, 895 (Pa. 2009) (stating that an intent to kill may be established by evidence that the defendant "use[d] … a deadly weapon on a vital part of the victim's body"). Accordingly, as there

---

[5] Appellant did not object to the admission of this testimony at trial. *Id.* at 224.

was sufficient evidence, aside from Jackson's confession, to convict Appellant of conspiracy to commit murder, and nothing else in the record demonstrates that the trial court considered Jackson's confession as evidence of Appellant's guilt, Appellant has not demonstrated that he was prejudiced by trial counsel's failure to raise a ***Bruton/Gray*** objection to the admission of Jackson's confession.

## Issue II

Next, Appellant avers that trial counsel was ineffective for "failing to move to preclude the use of the statement Walker gave to police on the night of the shooting naming Appellant as the shooter." Appellant's Brief at 21. Appellant maintains that Walker's statement was not admissible as substantive evidence under Pa.R.E. 803.1, or merely for impeachment purposes under Pa.R.E. 613. Because we conclude that the statement was admissible under Rule 803.1, we only address that aspect of Appellant's argument. In this regard, Appellant claims that Walker's statement was not sufficiently reliable, and it was not properly adopted by Walker, as he did not sign his statement until two days after providing it.[6] Appellant's Brief at 24-25.

_____

[6] Appellant also repeatedly stresses that the preliminary hearing judge precluded testimony regarding Walker's out-of-court statement, after Jackson's counsel objected to it on the grounds that Walker did not verify that "he gave that statement[,]" and because Walker claimed he "didn't read it and … he was under the influence of drugs at the time because he was in the hospital." N.T. Preliminary Hearing at 14. The preliminary hearing
*(Footnote Continued Next Page)*

Pennsylvania Rule of Evidence 803.1 directs that "[t]he following statements are not excluded by the rule against hearsay if the declarant testifies and is subject to cross-examination about the prior statement:"

**(1) Prior Inconsistent Statement of Declarant-Witness.** A prior statement by a declarant-witness that is inconsistent with the declarant-witness's testimony and:

(A) was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition;

(B) is a writing signed and adopted by the declarant; or

(C) is a verbatim contemporaneous electronic recording of an oral statement.

Pa.R.E. 803.1. The comment to this rule states that it is "consistent with prior Pennsylvania case law[,]" specifically ***Commonwealth v. Brady***, 507 A.2d 66 (Pa. 1986) (holding that a prior inconsistent statement of a non-party witness may be used as substantive evidence where the declarant is a witness at trial and available for cross-examination, the jury had the opportunity to observe the demeanor of the witness and to assess his credibility, and the statement was rendered under highly reliable circumstances assuring that it was voluntarily given), and ***Commonwealth v. Lively***, 610 A.2d 7 (Pa. 1992) (holding that a prior inconsistent statement

*(Footnote Continued)* ────────────────

judge ruled that "any testimony concerning the statement shouldn't be admissible[,]" without giving a specific reason for that ruling. *Id.* at 14-15. On appeal, Appellant cites no legal authority suggesting that the trial court was bound by the preliminary hearing judge's determination. Moreover, based on our discussion, *infra*, we conclude that Walker's statement was admissible under Rule 803.1 and, therefore, the magisterial court erred by not admitting it.

by a non-party witness shall be used as substantive evidence only when it was given under oath at a formal legal proceeding, or the statement was reduced to writing signed and adopted by the declarant, or the statement was recorded verbatim contemporaneously with the making of the statement).

Here, Detective Joseph Knoll testified that he went to the hospital to speak to Walker at approximately 9:30 p.m. on the night of the shooting, December 16, 2008. N.T. Trial at 237. The detective testified that when he arrived, Walker was "alert" and "aware of what[ was] going on." *Id.* at 238. Detective Knoll stated that Walker "was talking to family members" and to the officers. *Id.* Walker did not "seem like he was in pain." *Id.* Initially, Walker "seemed like he didn't want to talk to [the detective]. But after a few minutes, [the detective was] able to talk to him and he was able to give [the detective] some answers to a couple questions." *Id.* After the detective wrote down Walker's answers to the questions asked of him, Walker "read it over[.]" *Id.* Detective Knoll testified that he did not have Walker sign the statement that day because Walker had "IVs connected into him," the detective "wasn't sure which IV was going to what arm[,]" and he "was just afraid to have [Walker] sign anything at that time." *Id.* at 239. Consequently, Detective Knoll returned to the hospital two days later - on December 18, 2008 - to have Walker sign his statement. *Id.* at 241. On that day, Walker read his statement again, determined that he had no changes to make, and then he signed the statement. *Id.* at 241.

Based on this testimony, we conclude that Appellant was not prejudiced by trial counsel's failure to object to the admission of Walker's out-of-court statement. Walker took the stand at trial and was subject to cross-examination. There is no dispute that his testimony was inconsistent with his statement to police. That statement was taken just hours after the shooting, when the events were fresh in Walker's mind and he had no apparent motive for fabrication. Detective Knoll testified that Walker was alert and coherent when he spoke to police. Two days after answering Detective Knoll's questions, Walker adopted that statement by reading it over, deciding not to make any changes to it, and then signing it.[7] Thus, Walker's statement was admissible as substantive evidence under Rule 803.1(1)(B), and Appellant was not prejudiced by his counsel's failure to object to the admission of that statement.

**Issue III**

---

[7] We reject Appellant's argument that ***Commonwealth v. Presbury***, 665 A.2d 825 (Pa. Super. 1995), holds that "a statement must have been adopted when it was made, not at a later date." Appellant's Brief at 25. The only reference to this issue in ***Presbury*** is the following sentence: "Instantly, the prior statement was signed and adopted by Jones at the time the statement was made." ***Id.*** at 832. We disagree with Appellant that this sentence in ***Presbury*** must be read as holding that a statement can ***never*** be adopted "at a later date." Appellant's Brief at 25. Certainly, it is more common, and preferable, that a statement be signed and adopted at the time it is made. However, here, Walker was presented with his statement only two days after making it, and he clearly adopted it by reading it over, deciding not to make any changes to it, and then signing it.

In Appellant's third issue, he avers that his trial counsel was ineffective for not objecting "to police witnesses' hearsay testimony that other witnesses, who were not called or even named at trial, identified Appellant as being involved in the shooting." Appellant's Brief at 28. Briefly, during the testimony of Detective William Knecht, he was asked questions pertaining to how police had assembled a photographic array that included pictures of Jackson and Appellant. *See* N.T. Trial, 12/3/10, at 92-95. In his answers, the detective explained that, while he was conducting an interview of Bernadette Walker at the hospital, other "detectives [were] conducting interviews with witnesses who were on the scene[,]" from which "[t]hey were able to generate photos…." *Id.* at 94-95. Those photographs were then given to Detective Knecht at the hospital and shown to Ms. Walker. *Id.* at 92, 95.

In concluding that Detective Knecht's testimony was admissible (and, thus, Appellant's counsel was not ineffective for failing to object to it), the PCRA court reasoned that "certain out-of-court statements - offered to explain the course of police conduct - are admissible because they are offered, not for the truth of the matters asserted, but rather to show why the police took certain actions." PCO at 8 (citing *Commonwealth v. Chmiel*, 889 A.2d 501, 532 (Pa. 2005)). The court concluded that, here, "the testimony of the detective[] was not offered for the truth of the matter asserted, but rather merely to show how the police put together the photo array…." *Id.* at 9.

- 14 -

The record supports the PCRA court's determination. Detective Knecht's testimony that detectives compiled a photographic array, which included Appellant's and Jackson's pictures, based on information provided by witnesses at the scene, was not offered to prove the truth of what was asserted by those witnesses, *i.e.*, that Appellant and Jackson were involved in the shooting. Instead, the detective's testimony was offered merely to explain how the police developed the photographic array that was shown to Ms. Walker during her interview at the hospital. Therefore, Detective Knecht's testimony was not inadmissible hearsay, and Appellant was not prejudiced by his counsel's failure to object to that evidence.[8]

## Issue IV

Next, Appellant avers that his appellate counsel was ineffective for failing to argue on appeal that the trial court and the prosecutor exhibited

---

[8] We also note that we are unconvinced by Appellant's argument that the at-issue testimony by Detective Knecht should have been objected to, and precluded, due to the risk that the trial court would consider it as substantive evidence of Appellant's guilt. Appellant stresses that courts "must exercise caution in permitting" such 'course of police conduct' testimony, relying on cases that discuss the risks of admitting such evidence at **jury** trials, because "the statements might be taken **by the jury** as substantive evidence of guilt without there having been an opportunity to cross-examine the declarant." Appellant's Brief at 30 (quoting **Commonwealth v. Jones**, 658 A.2d 746, 751 (Pa. 1995)) (emphasis added). Again, Appellant was not tried by a jury, and his bald assertion that "there is evidence that the trial judge [in this case] **did** use improper evidence against Appellant" is insufficient to convince this Court that such was the case. **Id.**

bias and committed misconduct, respectively. Initially, the Commonwealth argues, and we agree, that Appellant has waived his appellate counsel ineffectiveness claims for our review. While Appellant devotes twelve pages of argument to his trial court bias and prosecutorial misconduct claims, his entire discussion of how appellate counsel acted ineffectively by not raising these issues on direct appeal amounts to the following paragraph:

> Instances of trial[]court bias and prosecutorial misconduct abounded in Appellant's trial. Co-defendant Jackson's counsel repeatedly objected and moved for a mistrial.[26] On appeal, Appellant's counsel failed to litigate these objections. Instead, appellate counsel raised only one frivolous claim of error, insufficient evidence of specific intent to kill. The PCRA court's finding that appellate counsel was not ineffective is not supported by the record.
>
> [26] As noted previously, Appellant's counsel relied heavily on Jackson's counsel to litigate his own case. He asked for a running incorporation of all of Jackson's counsel's objections which the trial court granted. Hence, all of the claims of error were preserved for appellate review.

Appellant's Brief at 43 (citations to the record omitted).

Notably, Appellant provides no discussion of this Court's standard of reviewing trial court bias and/or prosecutorial misconduct claims, or why we would have granted relief on direct appeal had appellate counsel raised these issues. Instead, Appellant argues these issues as if he is **currently** on direct appeal, which does not meet his burden of pleading and proving appellate counsel's ineffectiveness. **See Commonwealth v. Bond**, 819 A.2d 33, 40 (Pa. 2002) (finding that a "bald[] assert[ion] that all prior counsel were ineffective for failing to litigate the issue[,]" which was "tacked

- 16 -

on to waived claims of trial court error[,] do not discharge [the] appellant's burden of proving ineffectiveness") (citing, *inter alia*, **Commonwealth v. Bracey**, 795 A.2d 935, 940 n.4 (Pa. 2001) (concluding that "an undeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy [an a]ppellant's burden of establishing that he is entitled to any relief")).

In any event, we would conclude that Appellant's claims of trial court bias and prosecutorial misconduct lack arguable merit and, therefore, appellate counsel was not ineffective for failing to raise them on direct appeal. First, in regard to the trial court, Appellant contends that the court exhibited bias "in two ways … : (1) direct statements giving the appearance of bias or improper influence, and (2) conduct giving the appearance that the court pre-judged significant aspects of the evidence, including questioning which bordered on badgering of the witnesses." Appellant's Brief at 33. To summarize, Appellant takes issue with comments the court made during the examinations of Walker, Ms. Walker, and Murray, which indicated that the court did not believe their testimony that they could not recall the events of the shooting or anything they told police. **See, e.g.**, N.T. Trial, 12/03/10, at 61 (the court's stating that it did not believe Ms. Walker's claim that she could not recall anything she told police about the shooting); **id.** at 124-134 (the court's questioning Murray about whether he remembered the statement he made to police); **id.** at 133-34 (the court's

stating to Murray that he was "not being badgered[,]" but was instead "being questioned"); *id.* at 196 (the court's asking Walker if he was saying "the stenographer did not record his answers correctly" at the preliminary hearing when he identified Appellant); *id.* at 213 (the court's asking Walker if he "wanted [the court] to believe] that he "uttered these words [at the preliminary hearing] but didn't know what [he was] saying"). According to Appellant, these statements indicated the court was biased against him, as it pre-judged the credibility of these witnesses' claims that they did not remember the events of the shooting.

In rejecting this argument, the PCRA court reasoned as follows:

> Here, the trial court heard evidence as factfinder and was required to make credibility determinations of each witness. During the testimony of Walker's mother, the trial court expressed its skepticism of her truthfulness after she stated that she could not remember anything about the day that her son was shot despite being presented with her signed statement. The trial court cautioned her - by delineating the possibility of being taken into custody - that she risked criminal charges if she was not truthful. Similarly, despite his statement…, Walker's brother implied during his trial testimony that police compelled him to say [Appellant] was the shooter. While being questioned by the Commonwealth about these inconsistencies, the trial court stated, "You're not being badgered. You're being questioned…[.] You are not being forthright.["] [N.T. Trial,] 12/03/10[,] at 134. When Walker provided testimony [that was] inconsistent with his prior statements and testimony, the trial court, in disbelief of Walker's testimony, said, "So the stenographer did not record your answers correctly; is that what you are saying?" *Id.* at 196.
>
> When viewed in the context of the entire trial, the trial court's statements and questions to the witnesses were nothing more than candid assessments of the credibility of each witness. Indeed, there was nothing improper [in] the trial court['s] …

mak[ing] such assessments given its fact-finding role in a bench trial. Further, [Appellant] presents no evidence to overcome the presumption that a trial court acts without bias or prejudice. **See Commonwealth v. Tainan**, 734 A.2d 886, 889[] (Pa. Super. [] 1999) ([stating] a trial judge is presumed to act "properly, bound by the oaths of his office and faithful to the requirements of an unprejudiced, unbiased judiciary"). As such, there is no basis to find that any of the trial court's statements were prejudicial or deprived [Appellant] of a fair and impartial trial.

PCO at 14-15.

Having reviewed the at-issue comments and questions by the trial court, we would conclude that the record supports the PCRA court's rationale. At worst, the trial court's comments and questions of Walker, Ms. Walker, and Murray revealed that the court was frustrated with these witnesses' "collective amnesia," as the Commonwealth aptly puts it. **See** Commonwealth's Brief at 43. However, we see nothing in the record from which we could conclude that the court harbored a bias against these witnesses or Appellant, or that the court could not conduct an impartial assessment of the evidence. Moreover, we agree with the Commonwealth that,

especially when there is no jury to be influenced, a trial judge need not limit his reaction to a raised eyebrow when witnesses give combative and facially implausible testimony. Rather, the judge has the right and, at times, the duty to "ask questions when absurd, ambiguous, or frivolous testimony is given or testimony is in need of further elucidation." **Commonwealth v. Carson**, 913 A.2d 220, 249 (Pa. 2006).

Commonwealth's Brief at 41-42.

- 19 -

Additionally, Appellant's claim that the court's conduct exhibited a 'pre-judgment' of the witnesses' credibility is belied by the record, as the court's statements occurred ***after*** these witnesses testified that they could not recall the shooting or their statements to police. Appellant also takes issue with the judge's comment that he has "to use [his] own good common sense and [his] experience for many, many years as to what happened" in assessing the credibility of the witnesses and rendering his verdict. N.T. Trial at 279-80. Appellant argues that the court's comment reveals that the court was improperly "us[ing its] experience ***from other cases*** to draw inferences of guilt against Appellant." Appellant's Brief at 34 (emphasis added). Appellant is simply misstating the court's remark, as the court did not refer to other cases when mentioning its 'experience.' We see nothing improper in the trial court's comment. ***See Commonwealth v. Brown***, 52 A.3d 1139, 1169 (Pa. 2012) ("The trier of fact may bring to bear his or her sensory observations, experience, common sense and logic upon the witness to assess credibility and to determine the truth and accuracy of both the out-of-court declarations and in-court testimony.").

In sum, Appellant's claim that the trial court exhibited bias and 'pre-judged' the evidence is not supported by the record, and therefore, we would conclude that his appellate counsel was not ineffective for failing to raise this claim on direct appeal.

We would reach the same conclusion regarding Appellant's ineffectiveness claim pertaining to alleged prosecutorial misconduct.

Appellant specifically points to (1) remarks the prosecutor made to Walker, Ms. Walker, and Murray at the start of their testimony, which informed them that there would be consequences if they lied on the stand; (2) questions posed by the prosecutor to each of these witnesses that, according to Appellant, suggested that they were being dishonest; and (3) the following remark by the prosecutor during closing arguments:

> [The Prosecutor]: … [Walker, Ms. Walker, and Murray] told a different story in court today two years later -- and I'm not going to … ask the [c]ourt to consider why that is because I know the [c]ourt is more than aware of what happens when someone two years later gets -- has to face their accusers in court in an open courtroom in a city where we know what happens.

N.T. Trial at 283-84. Essentially, Appellant complains that the prosecutor's remarks to, and about, these witnesses implied to the court that the prosecutor "knew the witnesses' in-court testimony was false and that they had been intimidated." Appellant's Brief at 41.

In rejecting Appellant's arguments, the PCRA court concluded that "[e]ven if these comments were improper, they were not made to a jury[,]" and "[t]he trial court, through its experience and training, was able to disregard any inadmissible evidence and provide [Appellant] with a fair trial." PCO at 16. Appellant challenges the PCRA court's reasoning by baldly claiming that there was "one concrete example of the [trial] court's inability to disregard inadmissible evidence." Appellant's Brief at 43. Presumably, Appellant is referring to his belief that the court improperly considered Jackson's confession as evidence of Appellant's guilt. Appellant also stresses

that "the court's behavior," discussed *supra*, demonstrates that the court was prejudiced against him and these witnesses because of the prosecutor's remarks. Because we have considered both of these arguments, and determined that neither is supported by the record, we would ascertain no error in the PCRA court's determination that the prosecutor's comments, even if improper, did not unavoidably prejudice the factfinder, *i.e.*, the trial court. ***See Commonwealth v. Rolan***, 964 A.2d 398, 410 (Pa. Super. 2008) ("Generally, a prosecutor's arguments to the jury are not a basis for granting a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility towards the accused which would prevent them from properly weighting the evidence and rendering a true verdict.").

## Issue V

In Appellant's fifth issue, he argues that appellate counsel was ineffective for failing to challenge the sufficiency of the evidence to sustain **all** of Appellant's convictions, rather than only challenging his attempted murder conviction. Appellant does not specifically discuss what element(s) of aggravated assault, conspiracy, possessing an instrument of crime, or his firearm offenses that the Commonwealth failed to prove. Rather, he argues that his appellate counsel should have asserted that his convictions must all be overturned because they were premised only on out-of-court statements, which were all recanted at trial.

In rejecting this claim, the PCRA court relied on ***Commonwealth v. Brown***, 52 A.3d 1139  (Pa. 2012), where our Supreme Court held,

> that criminal convictions which rest only on prior inconsistent statements of witnesses who testify at trial do not constitute a deprivation of a defendant's right to due process of law, as long as the prior inconsistent statements, taken as a whole, establish every element of the offense charged beyond a reasonable doubt, and the finder-of-fact could reasonably have relied upon them in arriving at its decision.

***Id.*** at 1171.  The PCRA court also stressed that here,

> [o]n direct appeal, [Appellant's] appellate counsel challenged the sufficiency of the evidence of only the most serious charge of attempted murder.  The Superior Court affirmed [Appellant's] attempted murder conviction on direct appeal.  The other, less serious charges stem from the same facts and evidence that support the attempted murder conviction.  As such, [Appellant's] claim of error is meritless, *i.e.*, an appeal challenging the sufficiency of the evidence for the lesser convictions would have failed because the same evidence that supported the attempted murder conviction also supports the convictions on the lesser [crimes].

PCO at 13.

We see no error in the PCRA court's decision.  Our Court previously ruled that the out-of-court statements in this case were sufficient evidence that Appellant committed attempted murder.  Even had appellate counsel challenged the sufficiency of the evidence to support Appellant's other convictions on the basis that they rested only on out-of-court statements, ***Brown*** clarifies that such statements ***can be*** enough to sustain a criminal conviction.  Moreover, Appellant's attempt to distinguish the statements admitted in this case from those found admissible in ***Brown*** is unconvincing.

- 23 -

As in **Brown**, the statements were reduced to writing and signed by the witnesses, and each statement was admitted into evidence at trial under Pa.R.E. 803.1(1). Additionally, the statements were fundamentally consistent in naming Jackson and Appellant as Walker's shooters, and Walker, Ms. Walker, and Murray each testified at Appellant's trial, thus providing the trial court with the opportunity to assess the credibility of their claimed memory loss, and their suggestions of undue police influence in making their out-of-court statements. Again, Appellant does not make any argument that the element(s) of his crimes were not proven by the out-of-court statements. Thus, as in **Brown**, the out-of-court statements admitted in this case were sufficient evidence to sustain Appellant's convictions. Consequently, he was not prejudiced by appellate counsel's failure to raise a sufficiency challenge to each of his convictions on direct appeal.

## Issue VI

In Appellant's sixth and final issue, he argues that his "[t]rial counsel provided ineffective assistance in failing to ensure that Appellant's jury [trial] waiver was knowing and intelligent - indeed, he coerced it." Appellant's Brief at 49. Appellant specifically contends that the "in-court, oral waiver colloquy was deficient, as it listed none of the essential ingredients[,]" such as "informing Appellant that jurors would be his peers, that the jury verdict must be unanimous, and that Appellant would be allowed to participate in jury selection…." **Id.** at 52.

In rejecting this claim, the PCRA court noted that Appellant

signed a written waiver of a jury trial form. In addition to the signed waiver of jury trial form, [the trial court] conducted an oral colloquy where [Appellant] testified under oath that: (1) he understood he had an absolute right to a jury trial, (2) no promises were made to him to waive his right to a jury, (3) he understood that the judge is the factfinder and makes credibility determinations, (4) he was not forced or threatened to relinquish his right to a jury, and (5) his ability to understand the proceedings was not impaired. Following the colloquy, [Appellant] stated that he was satisfied with the representation of his attorney.

Based upon this record, [Appellant's] waiver of his right to a jury trial was knowing, intelligent, and voluntary. His claim that he was improperly advised and coerced to waive his right to a jury trial is contradicted by the record and thus patently frivolous. *See* [*Commonwealth v.*] *Mallory*, 941 A.2d [686], 696 [(Pa. 2008)] (the use of a written jury trial waiver form combined with an oral colloquy demonstrates a valid waiver of defendant's right to a jury trial).

PCO at 10.

On appeal, Appellant challenges the PCRA court's reliance on his written waiver colloquy. Appellant does not dispute that the written colloquy informed him of all the 'essential ingredients' of a valid jury waiver. Rather, he complains that the "circumstances show its signing was not knowing or intelligent." Appellant's Brief at 52. Appellant elaborates:

Appellant signed the form on the day of trial, December 3, 2010, even though the trial was converted from a three-day jury trial to a waiver trial eight months earlier. The eight-month gap between waiving the jury trial and signing the waiver form supports Appellant's contention that trial counsel agreed to waive a jury without Appellant's consent and [that counsel] foisted the idea upon him on the day of trial. According to Appellant, he signed the form without reviewing it or [having] trial counsel explain[] it to him because trial counsel appeared angry - over a separate matter - and impatient.

*Id.* at 52-53.

- 25 -

Appellant mischaracterizes the record. First, he incorrectly implies that he completed the oral and written waiver colloquies eight months before he **signed** the written waiver form. **See id.**; **see also id.** at 53 ("[T]he written form's validity is rebutted by its being signed months after the actual waiver…."). The record confirms that Appellant completed **both** the oral and written waiver colloquies on the same day, *i.e.*, December 3, 2010, and he signed the waiver document on that day as well. Moreover, the fact that a June 8, 2010 notation on the trial court's docket stated that this case would be a 'waiver trial' does not demonstrate that counsel decided on a non-jury trial without Appellant's consent. Indeed, that notation could just as easily support a conclusion that Appellant and his counsel discussed proceeding with a non-jury trial **for months** before Appellant actually waived his right to a jury in December of 2010. Notably, Appellant made no claim in his "Declaration," attached to his amended PCRA petition, that counsel "foisted the idea" of a non-jury trial on him on the day trial commenced.

Second, while Appellant now avers that he signed the written waiver colloquy form without reviewing it or discussing it with counsel, this assertion is also belied by the record. The waiver form explicitly directed that Appellant should "initial each page at the bottom, **but only if you have read and understood that page**." Written Jury Trial Waiver Colloquy, 12/3/11, at 1 (unnumbered; emphasis added). Appellant's initials appear at the bottom of each page of the colloquy. Additionally, at the end of the waiver form, Appellant signed his name directly under the following

statement: "I have answered the questions on the above Defendant Information Sheet and I have **reviewed the entire matter with my attorney and I understand all of the information given above**." **Id.** at 4 (unnumbered; emphasis added). Appellant's own attestations on the waiver colloquy form contradict his assertions on appeal. Moreover, as the Commonwealth points out, Appellant "admitted to the PCRA court that he had waived his right to a jury in prior cases - an admission that necessarily implied that the colloquies in this case were not the first time he was formally advised of the essential elements of a jury trial." Commonwealth's Brief at 55.

Given the totality of these circumstances - namely, the oral colloquy, the written waiver form completed by Appellant, and his admissions that he has previously waived his right to a jury trial - we see no error in the PCRA court's conclusion that Appellant's waiver of his right to a jury trial was knowing, intelligent, and voluntary. **See Mallory**, 941 A.2d at 698 ("[T]he mere absence of a record oral waiver colloquy does not automatically prove that a right was relinquished unknowingly or involuntarily and that the trial lawyer was ineffective for causing waiver. … When a presumptively-valid waiver is collaterally attacked under the guise of ineffectiveness of counsel, … the analysis must focus on the totality of relevant circumstances. Those circumstances include the defendant's knowledge of and experience with jury trials, his explicit written waiver (if any), and the content of the off-the-record discussions counsel had with his client.") (citations omitted).

Therefore, Appellant's trial counsel was not ineffective in advising or allowing him to waive his right to a jury trial.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/13/2017